# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | | |
|---|---|---|
| **Berry Petion,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23cv1468 (RDA/JFA)** |
| | ) | |
| **Harold Clarke,** | ) | |
| **Respondent.[1]** | ) | |

## <u>MEMORANDUM OPINION</u>

Berry Petion ("Petitioner" or "Petion"), a Virginia state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his February 20, 2020 convictions in the Circuit Court of Stafford County, Virginia. Dkt. No. 1. Respondent filed a Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. Dkt. Nos. 11-13. Petion was advised of his rights pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 15, and on March 14, 2024, he filed a motion for leave to amend his petition, Dkt. No. 18, which was granted on July 30 2024.[2]

Petion filed his amended petition on September 3, 2024. Dkt. No. 27. On November 21, 2024, the Respondent filed an Amended Motion to Dismiss and Rule 5 Answer ("Amended Motion"), with a supporting brief and exhibits. Dkt. Nos. 33-35.[3] On November 22, 2024, the Court again advised Petion of his right to file responsive materials pursuant to *Roseboro,* Dkt. No. 37, and he responded. Dkt. Nos. 38-45. Accordingly, the matter is ripe for disposition and for the

---

[1] Respondent's motion to have Chadwick Dotson, the Director of the Virginia Department of Corrections ("VDOC"), substituted as the proper party respondent in this habeas corpus matter is granted. Dkt. No. 35 at 1, n.1.

[2] On July 24, 2024, the Court addressed several motions Petion filed on March 21, 2024, Dkt. Nos. 17-22, and also denied Respondent's February 16, 2024 motion to dismiss without prejudice.

[3] Due to a calendaring error, Respondent failed to timely file his Amended Motion and sought leave to have his response deemed timely. Dkt. No. 30. The response did not prejudice Petion who was filed numerous responses, Dkt. Nos. 38-45, and Respondent's response is deemed timely filed.

reasons that follow, the Motion to Dismiss will be granted.

## I. Pending Motions

Petion's Motion to Vacate and Motion to Object are related in purpose because each seeks entry of judgment in his favor without considering Respondent's Amended Motion—in essence, he seeks a default judgment. *See Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) (default judgments are not contemplated in habeas corpus cases) (citing *United States ex rel. Mattox v. Scott*, 507 F.2d 919 (7th Cir.1974); *Allen v. Perini*, 424 F.2d 134 (6th Cir. 1970)); *see Stines v. Martin*, 849 F.2d 1323, 1324-25 (10th Cir. 1988) (default judgment in a habeas matter is inappropriate when delay was minor and apparently an isolated and inadvertent mistake that did not require either delaying the proceedings or deciding this matter without benefit of respondent's briefing).[4] Petion's motions, Dkt. Nos. 31 and 38 will there be denied as not well-founded.

Petion resolved his own Motion for Summary Judgment by filing a motion to withdraw it. His motion is granted and his motion for summary judgment is deemed withdrawn.[5] Petion's motion for an extension of time is also granted and his Amended Reply Brief to Virginia Attorney General's Response, Dkt. No. 42, and Affidavit, Dkt. No. 43, are deemed timely filed.[6]

---

[4] *See also Bermudez v. Reid*, 733 F.2d 18, 22 (2d Cir. 1984) (although a state's disregard of district court's orders to respond to habeas corpus petition was inexcusable, default judgment granting petition was improper and district court should have reached merits of petitioner's claim); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) (failure to respond to habeas petition "does not entitle the petitioner to a default judgment.").

[5] The motion to withdraw also sought appointment of counsel and the right to respond to the Respondent's Amended Motion. Petion has already filed his response to the Amended Motion, and his motion to appoint counsel is denied because he is not entitled to appointment of counsel. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Although the Court has discretion to appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Petion has presented no such exceptional circumstances. Moreover, appointment of counsel is not required in a habeas proceeding in the absence of an order granting discovery or an evidentiary hearing. *See Rules Governing Section 2254 Cases in the U.S. District Courts*, Rule 6(a), 8(c). The claims before the Court do not require discovery and concern historical matters that do not require a hearing.

[6] In his "Response to Roseboro Notice/Letter," Dkt. No. 45, Petion seeks copies of "Exhibits 5 and 9," which the Clerk noted on the docket when the Clerk filed Petion's "Amended Reply Brief to Virginia Attorney General's Response," ("Amended Reply"), documenting that "Exhibits 5 and 9" were not attached to his Amended Reply. Dkt. No. 42. The Clerk cannot provide either Exhibits 5 or 9 because Petion did not attach them to his Amended Reply.

## II. Procedural History

Following his two-day jury trial from October 23 to October 24, 2019, in the Circuit Court of Stafford County, Petion was convicted of: (i) conspiracy to distribute cocaine, in violation of Virginia Code § 18.2-256; (ii) conspiracy to distribute heroin, in violation of Virginia Code § 18.2-256; and (iii) one count of participation in criminal gang activity, in violation of Virginia Code § 18.2-46.2. Dkt. No. 35-1. At his sentencing on February 13, 2020, he was sentenced to seven years in prison for the conspiracy to distribute cocaine conviction, fifteen years in prison for the conspiracy to distribute heroin conviction, and twelve months in prison for participating in criminal gang activity conviction. *Id.* The final judgment order imposing a total sentence of twenty-two years and twelve months in prison was entered on February 20, 2020. *Id.*

Petion, by counsel, filed a petition for appeal in the Court of Appeals of Virginia alleging the evidence was insufficient to sustain any of his convictions. *Petion v. Commonwealth*, Record No. 0676-20-4 (Va. Ct. App. Nov. 9, 2020) at 24. A judge of that court denied his petition, found the evidence sufficient, and summarized the evidence as follows:

---

The Amended Reply was five pages in length and had thirteen attachments. There were exhibit numbers on twelve of the attachments, but no exhibit was designated either Exhibit 5 or 9. The twelve numbered exhibits are: "Ex. 1," Dkt. No. 42-1 (Videography Services Agreement, five pages); "Ex. 2," Dkt. No. 42-2 (April 29, 2019 Certificate of Analysis, two pages); "Ex. 3," Dkt. No. 42-3 (July 24, 2019 screen shot, one page); "Ex. 4," Dkt. No. 42-4 (one-page Disclosure of Plea Agreement); "Ex. 6," Dkt. No. 42-5 (October 14, 2019, screen shot); "Ex. 7," Dkt. No. 42-6 (undated one-page letter to Mr. Parrett); "Ex. 8," Dkt. No. 42-7 ("1:05 PM, Dec 15" screen shot, one page); "Ex. 10B," Dkt. No. 42-8 (one-page email chain from March 2019); "Ex. 11A," Dkt. No. 42-9 (one-page January 29, 2019 email with two screen shots attached); "Ex. 12," Dkt. No. 42-9; Dkt. No. 42-10 (two-page March 30, 2020 letter to "Charles Cosby, Att."); "Ex. 13," Dkt. No. 42-11 (one-page "10/08/2018" Invoice); and "Ex. 14A," Dkt. No. 42-12 (one-page April 29, 2019 Certificate of Analysis); and "Inquiry Form, Virginia State Bar). Petion did not affix an exhibit number to the thirteenth attachment. Dkt. No. 42-13 (complaint form and related letters, eight pages). It is evident that Petion failed to attach "Exhibits 5 and 9," when he submitted his pleading to the Court and the Clerk's notation simply documented that those two exhibits were not submitted with the filing. To the extent Dkt. No. 45 is construed as a motion, it is denied. The Court notes that in reviewing the state court habeas records that Petion submitted an Exhibit 5 with his state habeas petition (one-page, appears to be two text messages on October 19, 2019), as well as an Exhibit 9 (and 9A) (two pages of emails dated November 5, 2019 and December 11, 2019).

On October 9, 2018, Detective Scott was standing outside a hotel looking for a suspect when a young woman, later identified as Rachel Figueroa, approached him and asked him if he was waiting for something. When Scott replied that he was, the woman walked away briefly and returned with a man later identified as Voshon Carpenter. Both Figueroa and Carpenter then walked behind a hotel building before returning and conversing with each other. Figueroa walked to a truck as Carpenter approached Scott. Carpenter asked Scott if he was looking for "white," a slang term for cocaine. Scott answered that he was not, but he was looking for "brown," *i.e.,* heroin. As Scott followed Carpenter to the truck, Scott texted Detective Mervil for assistance. When Carpenter opened the passenger door of the truck, Scott saw Figueroa in the driver's seat holding a "bundle" of heroin. Mervil and other officers arrived at the scene, took Carpenter and Figueroa into custody, and seized the heroin. Scott asked Figueroa where she had gone when she had disappeared after speaking with him, and she told him that she was staying in the hotel "between [R]oom 140 and 138."

Based on that information, Mervil and Deputy Boyle focused on Room 139. Mervil, who was working undercover, knocked on the door while Boyle, who was in uniform, remained out of sight nearby. When the door opened, a man later identified as Jacob Dougherty, pulled Mervil inside. Dougherty told Mervil, "It's hot outside," a statement Mervil understood to mean that police officers were outside. Once inside the room, Mervil noticed crack cocaine on a scale on the nightstand. Appellant emerged from the bathroom, and Mervil announced that he was a police officer. In addition to appellant and Dougherty, two women, Shamara Cashwell and Ms. Norwood, were at the scene. Appellant and the other occupants were detained while the police obtained a search warrant.

While Scott waited for the search warrant, he asked Dougherty if he had "anything illegal" on him, and Dougherty answered that he had "dope" in his pocket. Scott explained that "dope" was a term for heroin. Scott recovered ten bags of heroin, or a "bundle," from Dougherty. When the officers executed the search warrant, they found a handgun on the bed next to the entrance and, in addition to the digital scale on the nightstand, two more digital scales in the nightstand drawer. They also found "correctional documents" bearing Carpenter's name. The documents referred to the "books of knowledge" for criminal street gangs and contained the gang's history and "lingo." The police also found a birth certificate and a social security card for Christopher Foxworth, a "certified" member of the criminal street gang, "West Side Piru." Foxworth's phone was in the room, but he was not. The phone contained images of Foxworth and his companions engaged in drug distribution.

Appellant told Scott that he was a "film artist" and that he was in town to shoot a "rap" video. Scott decided not to arrest appellant at that time. Later, however,

when Scott reviewed Foxworth's phone, he saw an image of appellant with Foxworth displaying "gang signs" only a few hours before the police raided the hotel room. The photo placed appellant and Foxworth at an establishment a short distance from the hotel. When Scott checked social media accounts linked to appellant, they contained posts about the "Bloods," a criminal street gang.

Foxworth's phone also contained pictures of him with Carpenter and Dougherty. Through further investigation of cell phones and social media accounts, Scott obtained information suggesting that Foxworth was recruiting Carpenter and Dougherty to join and set up a Piru "subset" gang of the Bloods. Scott also learned that Carpenter and Dougherty had pleaded guilty to participating in criminal gang activity through the Piru gang.

Posts on social media accounts connected to appellant contained references to "MOB" and "the Bloods," as well as the colors red and burgundy, the colors associated with that gang. Scott explained that the abbreviation, "MOB," referred to "Member of Bloods." Appellant had the tattoo "MOB" on his chest.

At trial, Figueroa testified on behalf of the Commonwealth and acknowledged that she had pleaded guilty to one count of conspiracy to distribute heroin; however, she also stated that she had received no promises regarding her sentencing. She admitted that she was a heroin addict and was at the hotel on October 9, 2018, because Foxworth had promised her half of a bundle of heroin in exchange for her picking up his "friend" at the bus station. Foxworth told her that his friend, appellant, would have the drugs and that appellant had "a lot of stuff."

As Figueroa drove appellant to the hotel, she remarked that she only saw a "little bag," rather than the large quantity Foxworth had mentioned. Appellant replied that he kept the "dope" in his hair. When appellant and Figueroa arrived at the hotel, Foxworth, Dougherty, Carpenter a/k/a "Rye," and a woman named Shamara were there. Based on the conversation between Foxworth and appellant, Figueroa concluded that the men had known each other "for a while." Eventually, Foxworth asked appellant, "Where's the stuff?" Appellant produced several small bags and distributed them to Carpenter and Foxworth. Figueroa testified that appellant later provided drugs to Dougherty.

When Figueroa sampled the heroin, she told Foxworth that she was disappointed in the quality. Foxworth offered to give her another half bundle and some gas money if she returned the next day and drove him around. When Figueroa returned the next day, appellant was quizzing Foxworth, Dougherty, and Carpenter about their knowledge of the gang and their roles. She also noticed that Foxworth referred to appellant as the "OG" and that appellant appeared to be "in charge." Appellant chastised Foxworth and Dougherty,

warning them that they should not keep the door open with a scale out, or draw attention to themselves by smoking marijuana outside the room.

On October 9, 2018, Figueroa and Carpenter returned to the hotel after driving Foxworth to a destination. As Figueroa walked toward the hotel, she saw Scott and asked if he needed help. Scott told her that he was looking for "her friend" because he was going "to serve" Scott. Figueroa understood Scott to mean that Carpenter was selling drugs to Scott. Figueroa continued to the hotel room and found Carpenter there. She told Carpenter that he should not be selling drugs to strangers and entered the bathroom to use some of the heroin Foxworth had given her. When she exited the bathroom, Dougherty lifted a pillow and showed her a gun. Figueroa told Carpenter that they should leave.

As Figueroa and Carpenter walked back to the truck, Carpenter stopped and conversed with Scott, but Figueroa continued to the driver's side of the truck. After speaking with Scott, Carpenter told Figueroa he needed more heroin to sell and asked her for the bags that Foxworth had supplied her. Figueroa testified that the police confronted her as she retrieved the heroin for Carpenter and Scott.

Shawn Connolly testified as an expert in the Piru Bloods gang. He explained that "an OG is someone that will have soldiers and pups, . . . low ranking gang members underneath them." Connolly noted that an "OG" "call[s] the shots and . . . dictates what happens in [a] particular area." He also stated that the "primary objective" of the Piru Bloods was making money through "drug deals and criminal activity." Connolly reviewed some of the social media posts on accounts associated with appellant and explained that the terminology appellant used in his posts had special meaning in the Bloods community. He also testified that, after appellant was incarcerated, law enforcement officers discovered Piru literature in his cell. Connolly stressed that he had never seen anything "Piru related" in the jail until February 2019, a month after appellant's arrest.

Corporal Cox testified as an expert regarding the "Eastside MOB Piru 464IMG." Cox stated that "IMG" was the same thing as "MOB Piru." According to Cox, appellant admitted during a 2015 interview that he had been a member of MOB Piru in the past, but he maintained that he had left the gang. However, based on Cox's interviews of other MOB Piru members between 2015 and 2017, he discovered that appellant was still active in the gang. Further, in September 2017, Cox discovered a music video created that year in which appellant appeared with other MOB Piru members. The video expressly referred to "Westside MOB Piru," and the individuals in the video used hand signs associated with MOB Piru members. Cox testified that appellant not only had "MOB" tattooed on his chest, he also had a tattoo stating, "Death Before Dishonor." Cox explained that that phrase was one of the "twenty-one rules" for MOB Piru members.

****

6

Cox testified that he discovered from other MOB Piru members that appellant remained active in MOB Piru, and a 2017 video, as well as appellant's social media posts, supported their accounts. The evidence reasonably supported the conclusion that Foxworth, Carpenter, and Dougherty were operating a drug enterprise out of the hotel room as party of their MOB Piru gang activity and that appellant was their supplier. Expert testimony established that the "primary objective" of the Piru Bloods was making money through "drug deals and criminal activity." Foxworth referred to appellant as his "OG," a gang term for a superior officer, and appellant directed Foxworth and Dougherty, both MOB Piru gang members, on how to improve their drug dealing practices.

Appellant bore tattoos associated with MOB Piru, and following his arrest, MOB Piru gang literature was found in his cell. Viewed as a whole, the evidence proved that appellant was an active member of a criminal street gang, that he knowingly participated in drug distribution, and that he did so in association with his fellow gang members.

Dkt. No. 35-2 at 2-5, 9. Petion sought review by a three-judge panel and that panel adopted the November 9, 2020 Order and denied his appeal on January 19, 2021. Dkt. No. 35-3.

Petitioner, by counsel, then filed a petition for appeal to the Supreme Court of Virginia again arguing that the evidence was insufficient to support his convictions. The court refused his petition on August 31, 2021. *Petion v. Commonwealth*, Record No. 210187, at 42.

On September 27, 2021, Petion, proceeding *pro se*, filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. Dkt. No. 35-4 (*Petion v. Clarke*, Record No. 210904) ("Hab. at ___"). Petion raised the following claims:

    I.    Ineffective Assistance of Counsel.

        a)  failed to sufficiently investigate the case, Dkt. No. 35-4 at 1-7;

        b)  failed to interview several witnesses; *id.* at 7;

        c)  failed to call Denise and Banks as witnesses; *id.* at 7-8;

        d)  failed to call Dougherty as a witness; *id.* at 8-9;

        e)  failed to raise an alibi defense at trial; *id.* at 9;

        f)  failed to object, or move for a mistrial when Corrie Meyer testified the presence of fentanyl was indicated in forensic testing of items seized by the police from the hotel room because his name was not listed on the certificate of analysis; *id.* at 9-10;

g) failed to object, move for dismissal, or move for a mistrial when Meyer testified the presence of fentanyl was indicated in forensic testing of items seized by the police from the hotel room because the certificate of analysis did not indicate that fentanyl was detected on the items tested; *id.* at 10-11;

h) failed to withdraw from his representation of Petitioner despite petitioner repeatedly asking him to withdraw; *id.* at 11;

i) failed to calculate and provide Petitioner with the range of punishment recommended by the sentencing guidelines prior to trial; *id*. at 11-14;

j) gave him faulty advice to reject a plea offer; *id.* at 14-15;

k) failed to subject the prosecution's case to meaningful adversarial testing by conceding that Petitioner was at the hotel party; and because counsel was "removed" from his law firm after trial due to his poor performance; *id.* at 15-16;

l) concealed documents given to him by Petitioner's wife to be used as evidence at trial; *id.* at 16-17;

m) failed to file a notice of appeal, despite being ordered to do so by the trial court; *id.* at 17-18; and

n) failed to introduce a cell phone video. *id.* at 18-19;

II.   Prosecutorial Misconduct and *Brady*[7] Violation. The prosecutor elicited Meyer's false testimony and irrelevant testimony about gangs and several other instances of false testimony. *Id.* at 19-21;

III.  Trial court errors: denying petitioner the right to trial by jury; admitting evidence of his incarceration; imposing an unreasonable sentence, and admitting hearsay. Also, the Commonwealth violated *Brady* when it failed to disclose Figueroa's criminal record, the nature of Figueroa's plea negotiations, and when it "failed to turn over evidence regarding witnesses' mental health." *Id.* at 21-22;

IV.  The evidence was insufficient to support his convictions. *Id.* at 22-23;

V.   New evidence demonstrated that he was actually innocent. *Id.* at 23.[8]

The Supreme Court of Virginia dismissed the petition on February 16, 2023. *Id.*

---

[7] *Brady v. Maryland*, 383 U.S. 83 (1963)

[8] The citation's reference the order discussing each claim. Petion also claimed the VDOC miscalculated his good time release date. The claim was dismissed as factually without merit. *Id.* at 21.

8

### III.    The Federal Petition

On October 10, 2023,[9] Petion, proceeding *pro se*, filed petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Dkt. No. 1 at 15. On July 30, 2024, the Court granted Petion leave to amend. Dkt. No. 23. After granting Petion's motions for extension of time, the amended petition was filed on September 3, 2024. Dkt. No. 27, and raises the following claims:[10]

1(c)    Ineffective Assistance of Counsel. Counsel was ineffective because he failed to call Jacob Dougherty as a witness. Dougherty's testimony would have established that Petion was innocent of the allegations that he had conspired to distribute drugs. Dougherty's testimony would have impeached Rachael Figueroa as to why Petion was in Virginia, and provided a basis for the admission of the contract for services. Dkt. No. 27 at 2-6.

4(c)    Ineffective Assistance of Counsel. Counsel was ineffective because he failed to object to Petion "being presented before the jury in wrist and ankle restraints during the trial proceeding." *Id.* at 6-9.

2(f)    Ineffective Assistance of Counsel. Counsel was ineffective because he "allowed the Commonwealth's qualified expert witness, Carrie Meyer, 'Meyer' Forensic Scientist to unduly prejudice petitioner when he failed to object to her testimony, or correct the record on cross-examination." *Id.* at 9-11.

2(g)    Ineffective Assistance of Counsel. Counsel was ineffective because he "operated under a conflict of interest to his client and should have recused himself." *Id.* at 11-13.

4(e)    Ineffective Assistance of Counsel. Counsel was ineffective because he "[f]ailed to object to the testimony of prosecution witness Connolly which was highly prejudicial to petitioner." *Id.* at 13-16.[11]

---

[9] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a pleading is filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk).

[10] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360-61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

[11] Petion adopted a unique numbering scheme for his federal claims that has been maintained for ease of reference.

## IV. Exhaustion and Procedural Default

A state petitioner must exhaust his claims by raising them in the appropriate state court before filing a federal habeas petition. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To exhaust a claim, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires that a petitioner's federal claims be presented to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hille*ry, 474 U.S. 254, 257 (1986). In Virginia, the factual[12] and legal claims raised by a Virginia petitioner in his § 2254 petition must have been presented to the Supreme Court of Virginia.

> "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002). This means that a petitioner must raise each federal claim "at each level of state court review," which includes not only his initial post–conviction petition before the trial court, but also on appeal. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary

---

[12] As the Fourth Circuit has explained, exhaustion requires that not only must a claim be exhausted but "both *the operative facts* and the controlling legal principles" upon which a petitioner relies must have been exhausted as well in state court. Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002)(emphasis added) (internal citations and quotations omitted). The exhaustion of facts is an important aspect of exhaustion that limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits," which "requires an examination of the state-court decision at the time it was made." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). *Pinholster* emphasized "that the record under review is limited to the record in existence at that same time—*i.e., the record before the state court*." *Id.* at 182 (emphasis added). The Fourth Circuit found that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" *Porter v. Zook*, 898 F.3d 408, 443 (4th Cir. 2018) (quoting *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015)).

'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review, thereby alerting that court to the federal nature of the claim."); *see Jones v. Sussex I State Prison*, 591 F.3d 707, 712-13 (4th Cir. 2010) (to exhaust, a "'the prisoner must 'fairly present' his claim in *each* appropriate state court . . . thereby alerting that court to the federal nature of the claim'. . . [he] must raise his claim before *every* available state court," including appellate courts "whose review is discretionary.'") (quoting *Reese*, 541 U.S. at 29; *O'Sullivan*, 526 U.S. at 847).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citation omitted). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state–law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." *Id.* (citation omitted).

Petion did not raise two of his federal ineffective assistance of counsel claims in state court, Claims 4(c) and 4(e), which renders each claim technically exhausted and procedurally defaulted. If Petion now attempted to raise either claim by way of a state habeas petition, each claim would be barred by Virginia's habeas statute of limitations, Virginia Code § 8.01-654(A)(2), and its successive writ statute. Va. Code Ann. § 8.01-654(B)(2). As both the Virginia statutes are deemed adequate and independent state procedural rules barring federal habeas review, the claims would be deemed simultaneously exhausted and defaulted.[13] *See Pope v. Netherland*, 113 F.3d 1364,

---

[13] The record establishes that Petion was aware of the principle facts in Claims 4(c) and 4(e) before he filed his state habeas petition. Petion was aware of Connolly's testimony as well as his attorney's failure to object because these matters occurred during trial while Petion was present. Further, with regard to the alleged use of restraints, Petion discussed this issue in his state habeas, Claim III, which alleged "due process" violations. Petion stated in his state habeas petition that there were "visible shackles," that he was "shackled without special need," and that the jury saw him "in leg irons." Hab. at 101 (citing *Deck v. Missouri*, 544 U.S. 622, 628 (2005)).

1372 (4th Cir. 1997) (Virginia Code § 8.01-654(B)(2) is independent and adequate state law default); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (Virginia Code §§ 8.01-654(A)(2) and 8.01-654(B)(2) are independent and adequate state law defaults).

A federal court may review a defaulted claim if the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a fundamental miscarriage of justice. *Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2005). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman v. Thompson*, 501 U.S. 722, 753-54, (1991).[14] To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

A procedural default also may be excused if the petitioner demonstrates that "failure to consider the claim[] will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, *i.e.*, that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In order to make this showing, a federal habeas petitioner must present new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of

---

[14] Although ineffective assistance of counsel may be sufficient to establish "cause" to excuse a default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), where a habeas petitioner seeks

> review of claims defaulted during state habeas proceedings, he must show that he raised the ineffectiveness argument as a cause for the defaulted substantive claims during his state habeas proceedings. If a petitioner did not raise the ineffectiveness claim at the state habeas level, a federal habeas court may not consider it. *Edwards*, 529 U.S. at 452-53.

*Powell v. Kelly*, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th Cir. 2009).

nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

*Cause and Prejudice*.

It is well-established that, in a typical case of procedural default, courts "will not review [the claim's] merits . . . unless the petitioner establishes *both* cause for the default and prejudice." *Plymail v. Mirandy*, 8 F.4th 308, 316 (4th Cir. 2021) (emphasis added). Petion does not argue cause to excuse his default of his ineffective assistance of counsel claims. The Court will therefore evaluate the ineffective assistance of counsel claims under *Martinez v. Ryan*, 566 U.S. 1 (2012)*, which recognized a narrow exception for defaulted claims of ineffective assistance of trial counsel in a state, such as Virginia, where a prisoner is not allowed to raise an ineffective assistance of counsel claim on direct appeal. *Martinez* held that

> a prisoner may establish cause for a default of an ineffective–assistance [of trial counsel] claim . . . where the state courts did not appoint counsel in the initial–review collateral proceeding . . . [or] where appointed counsel in the initial–review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*[, 466 U.S. 668 (1984).

566 U.S. at 14.

To establish cause under *Martinez*, a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one . . . that the claim has some merit." *Id.*; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013). In interpreting *Martinez,* the Fourth Circuit reiterated that *Martinez* applies only to claims of ineffective assistance of trial counsel— "a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if . . . the ineffective-assistance-of-trial-counsel claim is a substantial one." *Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014). More recently, the Fourth Circuit has clarified what constitutes a substantial claim. "To invoke *Martinez*, [a petitioner] must demonstrate that this underlying ineffective assistance of counsel claim is substantial with reference to *Strickland's* two familiar prongs." *Sigmon v. Stirling*,

13

956 F.3d 183, 199 (4th Cir. 2020); *Owens v. Stirling*, 967 F.3d 396, 423 (4th Cir. 2020) (to satisfy

that a claim is substantial under *Martinez*, a habeas petitioner must show that the claim "has some

merit, *with respect to both prongs of Strickland*") (emphasis added).

> To establish ineffective assistance of counsel under *Strickland*, a defendant must
> satisfy two standards: (1) "that counsel's performance was deficient," and (2) that
> counsel's deficient performance "prejudiced the defense." 466 U.S. at 687. The first
> prong, deficient performance, requires a showing "that counsel's representation fell
> below an objective standard of reasonableness," as measured by "prevailing
> professional norms" and in light of "all the circumstances" of the representation.
> *Id.* at 688.

*Owens*, 967 F.3d at 411-12. "Failure to make the required showing of either deficient performance

or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.[15] *See, e.g.,*

*Ward v. United States*, 982 F.3d 906, 913-14 (4th Cir. 2020) (a court "need not reach" the first

prong of the ineffective assistance claim if it "clearly fails on *Strickland's* prejudice prong.")

(citing *Strickland*, 466 U.S. at 694 (requiring "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different").

    *A. Claim 4(c)*

    On March 24, 2024, Petion, citing *Martinez*, 566 U.S. 1 at 15, sought leave to amend his

petition to allege that his attorney was ineffective for failing "to object to the petitioner wearing

shackles in front of the jury." Dkt. Nos. 18 at 1, 20 at 1. The Court granted Petion leave to amend

his petition "to add a claim of ineffective assistance of counsel—Counsel was ineffective for not

objecting to the Petitioner appearing in shackles in front of the jury." Dkt. No. 23 at 1. He filed his

amended petition on September 3, 2024, and labeled this claim as Claim 4(c). Dkt. No. 27 at 6-9.

The order granting leave to amend, citing *Martinez*, noted that this was a "potential substantial

claim that would provide 'cause' to consider the defaulted claim." Dkt. No. 30 at 1. The Order

---

[15] "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

noted that the claim contained "little if any facts," and directed Petion to include in his amended petition "specifics to include, but not limited to *the date* the jury allegedly saw him in shackles, at *the approximate time during the trial* that the alleged incident occurred, whether it was *brought to anyone's attention* (especially his trial counsel or appellate counsel), and *the names of any potential witnesses (if any)*." *Id.* at 2 (emphasis added). Despite directing him to include specific facts, and respondent's argument that Petion had "failed to comply with this Court's direct order" to provide the "specifics regarding his allegation," as directed, Dkt. No. 35 at 21, n.5, Petion failed to include any additional facts either in the Amended Petition or in either of his two substantive responses to the Amended Motion to Dismiss. *See* Dkt. Nos. 42 and 43.

Petion's Amended Petition also included an additional claim that he failed to include in either of his motions for leave to amend—counsel was ineffective for not inquiring during *voir dire* as to any potential bias or prejudice of the jury panel members. Petion did not raise Claim 4(c) or the allegation regarding the adequacy of *voir dire* in the state-habeas proceedings and each was raised for the first time in the Amended Petition dated August 26, 2024—approximately eighteen months after state habeas proceedings concluded on February 16, 2023. The claims are defaulted.[16]

*Restraints*. Here, despite a detailed directive as to relevant facts that would support the new claim regarding restraints, Petion has not alleged when the jurors allegedly saw him in shackles/restraints; the approximate time during the trial that the alleged incident occurred; and the names of any potential witnesses (if any) that could corroborate this allegation. A review of the transcripts of his two-day jury trial do not establish that he was in restraints.[17] There is no

---

[16] Petion did reference being seen in "visible shackles," in his state habeas petition within the context of a due process claim; and also referenced in his state habeas petition that Petion's attorney instructed him not to testify so that the jury would not see "the leg irons." Hab. at 101. The petition was executed on August 25, 2021. *Id.* at 7. Petion did testify during the sentencing portion of the trial, but the transcript does not reference any delay or necessity for delay to remove or attach any constraints before or after Petion testified. *Id*. at 780-81, 785-87, 795.

[17] *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (bald assertions and conclusory allegations are insufficient to support habeas relief), *overruled on other grounds as recognized in Yeatts v. Angelone*, 166 F.3d 255, 261 n.4 (4th Cir. 1999); *see also United States v. Dyess*, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding that the district court may disregard "vague and conclusory allegations" in habeas petitions and review only claims "supported by

mention or other comment that Petion was in restraints before the jury by Petion, the court, either party, or any court personnel. Indeed, the transcripts reflect that Petion was brought out from the holding cell before the jury was seated, and that the jury was excused before Petion was returned to the holding cell. Dkt. No. 35-5 at 6, 16-17, 99-100-08, 129-31, 147, 249-51, 257-58, 335-37, 370-73; Dkt. No. 35-6 at 4-5, 6-7, 31-32, 34, 98-103, 103-04, 132-33, 138. Petion rested after a motion to strike was denied, and did not provide any evidence or testify on his own behalf in the guilt phase of the trial, which means he did not walk from the defendant's table to the witness stand in front of the jury. The circumstances under which a jury or juror views a defendant in restraints matters.[18]

---

facts and argument."); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

[18] The Ninth Circuit distinguished *Deck* holding that

*Deck* concerned visible shackling in the courtroom. We have held that visible shackling outside the courtroom—at least when the viewing is brief and accidental—is not inherently prejudicial; instead, a due process violation occurs only if the criminal defendant demonstrates actual prejudice. *See Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004) (holding that one "juror's viewing of Williams in handcuffs with a coat draped over his handcuffed hands as he went to or from the courtroom was not inherently or presumptively prejudicial"); *Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002) (holding that there was no inherent prejudice where "a few jurors at most glimpsed Ghent in shackles in the hallway and as he was entering the courtroom"); *United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995) (holding that "a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial" where, "on the sixth day of trial, the jury briefly witnessed [the defendant] in handcuffs as he entered the courtroom"); *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir. 1992) (holding that, concerning "a brief and accidental viewing of the defendant in a corridor, chained [at the waist]," "[n]o harm that rises to a constitutional level is done by such an unintended, out-of-court occurrence"); *United States v. Halliburton*, 870 F.2d 557, 559-61 (9th Cir. 1989) (holding that a "brief and inadvertent display of Halliburton in handcuffs" when "he was observed handcuffed to a co-defendant by at least two jurors as the elevator doors opened" was not inherently prejudicial).

*Wharton v. Chappell*, 765 F.3d 953, 964-65 (9th Cir. 2014); *see United States v. Diamond*, 561 F.2d 557, 559 (4th Cir. 1979) ("we do not think that the district court was required to declare a mistrial because a juror inadvertently saw defendant Diamond in handcuffs during the course of the trial, since neither defendant has shown actual prejudice."). Based upon Petion's alleged statement by his counsel instructing him not to testify so that the jury would not see "the leg irons," Hab. at 101, it would be reasonable for counsel not to object and draw greater attention to the restraints—especially given that there would be evidence of Petion's pre-trial incarceration, which the trial judge allowed with a limiting instruction. Hab. at 469, 543. Indeed, assuming Petion's allegation is true, counsel may have believed that the limiting instruction given was sufficient to mitigate prejudice and further objection would have drawn greater attention to the issue. The Supreme Court has held that the "risk of prejudice, . . . can be cured with proper instructions, and 'juries are presumed to follow their instructions,'" which are sufficient "to cure any possibility of prejudice." *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

Most importantly, petitioner has failed to show prejudice.[19] *See Sigmon*, 956 F.3d at 202 (rejecting argument that prejudice is presumed in a claim of ineffective assistance due to counsel's failure to object to a visible "stun belt," and requiring the petitioner to show prejudice pursuant to *Strickland*);[20] *see also Byers v. Basinger*, 610 F.3d 980, 989 n.6 (7th Cir. 2010) (finding that even if a defendant has a jury trial while wearing ankle restraints, he must still prove his appearance affected the outcome of his trial); *Whitman v. Bartow*, 434 F.3d 968, 971-72 (7th Cir. 2006) (finding any error in having the defendant proceed to a jury trial while wearing a prison jumpsuit was harmless because the State presented overwhelming evidence of the defendant's guilt). Petion ignores his burden by arguing that prejudiced exists simply because he was allegedly "visibly

---

[19] *Weaver v. Massachusetts*, 582 U.S. 286, 294 (2017) held that for a structural error (denial of public trial) if "there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" *Id.* at 299 (citing *Neder v. United States*, 527 U. S. 1, 7 (1999)). However, if the same error is raised not at trial and on appeal but in the context of trial counsel's failure to object, "*Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id.* at 300-01 (citation omitted). When an error is raised as an ineffective assistance of counsel claim, the burden is placed on the petitioner because the failure to object deprives "the trial court . . . of the chance to cure the violation . . . ." *Id.* at 302.

Petion's failure to provide specific details regarding the alleged claim that the jury saw him in restraints weighs against finding prejudice because "[c]ourts have generally found brief and inadvertent confrontations between a shackled accused and one or more members of the jury insufficient to show prejudice." *Harrell v. Israel*, 672 F.2d 632, 637 (7th Cir. 1982) (citations omitted); *see United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995) ("Because a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial to a defendant, [citation], [the petitioner] must demonstrate actual prejudice to establish a constitutional violation.").

[20] Petion's relies on *Deck*, 544 U.S. 622, for the proposition that shackling in view of the jury is presumptively prejudicial and the burden rests with the state to prove that the shackling was harmless beyond a reasonable doubt, *id.* at 635. This reliance is misplaced because he has raised an ineffective assistance claim in habeas, not a due process claim on direct appeal as in *Deck*. "[W]hile *Deck* altered the burden of proof in a substantive shackling claim brought under the Due Process Clause, it did not affect the petitioner's burden to prove actual prejudice when raised in an ineffective assistance of counsel claim on collateral review . . . . In other words, *Deck* does not alter [a petitioner's] burden to establish actual prejudice under *Strickland* in order to sustain his Sixth Amendment claim." *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1321 (11th Cir. 2016); *accord Stephenson v. Wilson*, 619 F.3d 664, 671 (7th Cir. 2010) ("Had Stephenson challenged the stun belt on direct appeal, the state would have had to prove beyond a reasonable doubt that the stun belt had not influenced the verdict. But because he alleges only that his counsel was ineffective in failing to challenge the stun belt, he must show that he was prejudiced by counsel's error. The burden of proving prejudice is on him because to prevail on a claim of ineffective assistance a defendant must show not only that counsel's performance fell below minimum professional standards but also that the subpar performance harmed the client."). The Fourth Circuit noted the distinction that, if a claim alleges that the restraints were seen by a jury on a direct appeal that prejudice is presumed, *Sigmon*, 956 F.3d at 202 (citing *Deck*, 544 U.S. at 635), but if a habeas petitioner raises such a "claim of ineffective assistance of counsel," the petitioner must show *Strickland* prejudice, *i.e.*, that there is "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

restrained during trial." Dkt. No. 43 at 7.  By failing to point to any specific time where he was visibly restrained in front of the jury and by further failing to demonstrate prejudice, Petion has failed to meet his burden.  The new claim alleging ineffective assistance of counsel regarding the alleged visibility of restraints is not a substantial claim.

*Voir Dire*. Assuming this claim is properly before the Court, it is not substantial. Petion alleges that counsel was ineffective for failing "to inquire into any potential bias or prejudice by members of the jury panel." Dkt. 27 at 7. The record, however, establishes that counsel did in fact inquire into bias and prejudice during *voir dire*.

The trial judge provided an explanation to the panel members that the court and counsel would ask them questions to determine if they could follow "the instructions of the court," and "render a fair an impartial decision in this case." Hab. at 319, 321-22. The trial judge began the process by asking if any of the panel members were—related by blood or marriage to Petion; if they were friends, clients or former clients of any of the attorneys involved in the case; if they had any interest in the trial or outcome of the case; if they had acquired any information about the alleged offense from the media or other sources; if they had formed any opinion about the guilt or innocence of the accused; if they had any bias or prejudice against either the Commonwealth or Petion; if they knew of any reason why each could not give a fair and impartial trial to the Commonwealth and to Petion based solely on the law and the evidence; and if they had any philosophical, moral or religious beliefs that would prevent them from being impartial in the case. The panel members answered each inquiry in the negative, and the trial judge asked additional questions—if they understood Petion was presumed to be innocent; if they understood the Commonwealth "must prove" Petion's guilt beyond a reasonable doubt; if they understood that Petion was not required to produce any evidence. The panel members answered affirmatively to

each question.[21] *Id.* at 322-26. Thus, the record establishes that *voir dire* removed potentially biased panel members and that the jurors that sat were impartial.[22]

The *voir dire* continued with the prosecutor echoing the trial judge's statement about the purpose of the questions was to determine if the panel members could be "fair," and then he provided a summary of the offense as to the date and location of the offenses. *Id.* at 327-28. The prosecutor's questions concerned—if they had acquired any information from the media; if they knew any of the officers or other witnesses who would testify; and if they had any affiliation now or in the past with a street gang. The panel members answered in the negative. *Id.* at 328-30. The prosecutor next inquired if the nature of the offenses, which involved conspiring to distribute cocaine and heroin, might affect their ability to be fair. The questions continued inquiring if any of the panel members had any friends or family members who were affiliated with or worked in law enforcement, and if there were affirmative answers the responding panel member was asked if they could be fair and weigh testimony from a law enforcement office the same as other witnesses and give them no more credence than a civilian witness; if a witness' drug use (addiction) would affect a panel member's ability to be fair; if a witness/codefendant's hope for consideration, even though they had not been made any promises, can be fair, "keep an open mind," and decide for themselves if the witness is worthy of being believed or not; if each panel member could follow the trial judge's instructions; and if they understood that they had to find proof beyond a reasonable doubt to convict and that if there was no proof beyond a reasonable doubt that they had to find Petition not guilty. *Id.* at 311-18.

---

[21] The trial judge asked other questions, but they were not directed at bias or prejudice and concerned mostly logistical issues such as work schedules, medical appointments, or other similar matters.

[22] In this same vain, during trial, when evidence was admitted that petitioner was incarcerated, the court gave a cautionary instruction that the fact that petitioner was in jail at some point between his arrest and trial was not evidence against him and should not be considered. Hab. at 469. The trial court further reinforced this point by giving the jury oral and written instructions that Petion was presumed innocent and that "the fact that the defendant may have been incarcerated at some point after his arrest but prior to trial is not evidence against him, and you should not consider it." Id. at 543; Dkt. No. 35-7.

At the end of the prosecutor's questioning, the trial judge held a bench conference indicating the answers by several panel members indicated that there were some panel members that "pretty clearly" should be struck. *Id.* at 200. The prosecutor and defense counsel agreed and seven of the panel members (Nos. 12, 21, 29, 32, 34, 35, and 40), were struck for cause without objection by either counsel. *Id.* at 330, 336, 369-75.

During defense counsel's portion of the *voir dire*, counsel asked if any of the panel members might not be fair and impartial to a law enforcement witness "for one reason or another;" if they believed Petion must have "done something" to be on trial; if they were able to apply the facts to the law as instructed by the trial judge; whether they understood that Petion was innocent until proven guilty; whether they understood that Petion did not have to testify and if he did not testify if that would "cause [the panel members] to no longer be fair and impartial about the rest of the case or the evidence; in addition to his right to remain silent, did they understand that Petion did not have to present any evidence or a defense because it was the prosecution's burden to prove the case beyond a reasonable doubt; and if they knew of any reason why they could not be a fair and impartial juror if selected. *Id.* at 377-90.

Defense counsel moved to strike two additional jurors (Nos. 8 and 20) for cause because their answers to his question about law enforcement officer testimony indicated that they could not be fair and impartial. The trial judge granted the motion to strike. *Id.* at 388-91. The attorneys exercised their peremptory strikes and a jury was seated and sworn. *Id.* at 399-401.

"On habeas review, federal courts generally accord 'particular deference' to the judgment of trial counsel during *voir dire*." *Gardner v. Ozmint*, 511 F.3d 420, 426 (4th Cir. 2007) (citing *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *see also Conner v. Polk*, 407 F.3d 198, 206 n.5 (4th Cir. 2005) (holding that "'counsel's actions during *voir dire* are presumed to be matters of trial strategy.'") (quoting *Miller v. Francis*, 269 F.3d 609, 615-26 (6th Cir. 2001)) *Yeatts v. Angelone*, 166 F.3d 255, 265 (4th Cir. 1999) (a federal court's "'review of counsel's

performance in *voir dire* is 'highly deferential.'") (quoting *Strickland*, 466 U.S. at 689); *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000) ("counsel's actions during *voir dire* are presumed to be matters of trial strategy").

Here, the record, as summarized above, establishes that the *voir dire* in this case was thorough and that defense counsel asked probing questions about bias and impartiality that led to two jurors being struck for cause, in addition to the seven struck for cause after the prosecution's questioning. The trial judge, the prosecutor, and defense counsel each asked questions designed to determine if a prospective juror could be impartial. The record further establishes that counsel's *voir dire* was not unreasonable. Petion's allegation of failing to inquire into bias and prejudice is, at best, conclusory. *See Nickerson*, 971 F.2d at 1136 (bald assertions and conclusory allegations are insufficient to support habeas relief), *overruled on other grounds as recognized in Yeatts*, 166 F.3d at 261 n.4; *see also Dyess*, 730 F.3d at 359-60 (holding that the district court may disregard "vague and conclusory allegations" in habeas petitions and review only claims "supported by facts and argument"); *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Petion has not established that any of the jurors who sat on his case were biased or prejudiced against him, and he has not identified what question should have been asked that was not, much less that there would be an answer that established a juror was not fair and impartial. Lastly, Petion has not established prejudice. This ineffective assistance of counsel is not substantial and therefore his claim in this regard is procedurally defaulted, fails, and will be dismissed.

*B. Claim 4(e).*

Claim 4(e) alleges that Petion's counsel was ineffective because counsel failed to object to Corporal Connolly's prejudicial testimony because it showed that Petion had been incarcerated pre-trial and improperly encouraged the jury to believe he was involved in a gang. Petion's claim fails to satisfy either prong of *Strickland*.

Petion was charged with participating in criminal gang-activity, thus, Corporal Connolly's testimony was relevant to whether Petion was participating in a gang. *Guill v. Commonwealth*, 495 S.E.2d 489, 491 (Va. 1998) ("Evidence of 'other crimes' is relevant and admissible if it tends to prove any element of the offense charged.") (citing *Kirkpatrick v. Commonwealth*, 176 S.E.2d 802, 805 (1970)).[23] Connolly's testimony established that Piru graffiti and literature, which had never been found in that jail, began to proliferate shortly after Petion's incarceration. Hab. at 457-59. Notably, ample other evidence and testimony established petitioner's involvement in the Pirus gang, Dkt. No. 35-4 at 3-6,[24] which was relevant to the elements of that crime. Accordingly, counsel had no basis upon which to object to the admission of this testimony, and did not perform deficiently by not making a futile motion. *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions.") (citation omitted). Also, as noted, Connolly's testimony was not the only evidence that Petion was part of a gang. *See, infra* at note 22. *Springs v. Payne*, 95 F.4th 596, 603 (11th Cir. 2024) (claim that witness should have been called fails where "other witnesses had already established the same or similar evidence") (citing *Worthington v. Roper*, 631 F.3d 487, 504-05 (8th Cir. 2011) (concluding that state court's no-prejudice determination was not unreasonable where defense counsel did not call defendant's

---

[23] *See generally Payne v. Commonwealth*, 357 S.E.2d 500, 503 (Va. 1987) (upholding admission of evidence that the inmate defendant's stated motive in killing the inmate victim was to "prove himself" in order to be admitted into a prison gang); *Utz v. Commonwealth*, 505 S.E.2d 380, 585 n.2 (Va. Ct. App. 1998) (in a case in which the defendant asserted he acted in self-defense, upholding the admission of the Commonwealth's evidence that the defendant and the victim were in rival gangs to establish the possibility of a motive for the killing other than self-defense) (collecting cases).

[24] The Supreme Court of Virginia summarized the evidence at trial in its order dismissing the state habeas petition. "Foxworth was a 'certified' member of the Piru Bloods, or 'Pirus,' a subset of the Bloods street gang;" Dougherty and Carpenter both pled guilty to participating in the Pirus." Dkt. No. 35-4 at 4. Corporal Connolly, a certified expert on gangs, with a specific expertise in Piru," reviewed online postings of Petion that referenced his "membership in the Bloods and used a variety of slang terms that were associated with the Pirus, including 'WH662P,' 'WH464P,' 'MOB,' and 'Burgundy Beautiful.'" *Id.* at 5. Further, in a 2015 interview, Petion denied he was a Piru member but he "'knew a lot" about the Pirus," and "refer[ed] to the Pirus as 'my people' or 'my family,' [and] then clarify[ied] he was not a member 'anymore.'" *Id.* at 6. All of this evidence was separate and apart from Connolly's testimony about the jail graffiti and pamphlets.

father to testify about the defendant's abusive childhood but the jury heard similar evidence from his aunt and other witnesses)); *United States v. Watkins*, 486 F.3d 458, 466-67 (8th Cir. 2007) (concluding that there was no prejudice where other evidence clearly established the identity of the illegal substance), *vacated on other grounds*, 552 U.S. 1091 (2008).

Although Connolly's testimony indicated that Petion had been incarcerated pre-trial, counsel sought a cautionary instruction, which was granted. Hab. at 405-09, 637-38. Courts "generally presume that a jury will follow cautionary instructions regarding potentially prejudicial evidence." *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998) (quoting *United States v. Johnson*, 114 F.3d 435, 444 (4th Cir.1997)); *Zafiro*, 506 U.S. at 540-41. Petion has not shown that counsel's decision on minimizing the prejudice from admissible evidence was unreasonable.

Petion has not established an unreasonable act by counsel and he has not established *Strickland* prejudice. This ineffective assistance of counsel claim is not substantial, fails, and will be dismissed.

### V. Merits Standard of Review (Claim 1c, Claim 2f, and Claim 2g)

Under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Renico v. Lett*, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be '"objectively unreasonable,"' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted); *see Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state decision is an unreasonable application of federal law only if the ruling is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "'highly deferential standard' . . . 'demands that state court decisions be given the benefit of the doubt.'" *Renico*, 559 U.S. at 773 (citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Pinholster,* 563 U.S. at 181.[25] "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473-74.

---

[25] The Fourth Circuit has recently emphasized the limitations on federal courts in reviewing merit decisions by state courts stating that federal courts

> are limited in the evidence [they] can consider when [they] evaluate the state court's adjudication of a particular constitutional claim. "By its plain terms, § 2254(d)(2) limits our review to the evidence placed before the state PCR court." *Elmore [v. Ozmint]*, 661 F.3d [783, 850 (4th Cir. 2011)]. Because the "backward-looking language [of § 2254(d)(1)] requires an examination of the state-court decision at the time it was made[,] . . . the record under review is limited to the record in existence at that same time." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

*Horner v. Nines*, 995 F.3d 185, 198 (4th Cir. 2021).

Claims that counsel was ineffective are determined based on the highly demanding standard set forth for such claims in *Strickland*. Under *Strickland*, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. *See Strickland*, 466 U.S. at 687. The Supreme Court has characterized AEDPA deference in the context of "a *Strickland* claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." *Knowles*, 556 U.S. at 123; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016). In commenting on double deferential review, the Fourth Circuit held that "AEDPA and *Strickland* thus provide 'dual and overlapping' lenses of deference, which we apply 'simultaneously rather than sequentially.'" *Crockett v. Clarke*, 35 F.4th 231, 242 (4th Cir. 2022) (quoting *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020). "This double-deference standard effectively cabins our review to a determination of 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.* (quoting *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016)). "[B]ecause counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' . . . federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods*, 578 U.S. at 117 (citations omitted). "Section 2254(d) codifies the view that habeas corpus is '"a guard against extreme malfunctions in the state criminal justice systems,"' not a substitute for ordinary error correction through appeal." *Valentino v. Clarke*, 972 F.3d 560, 581 (4th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102-03) (additional citation omitted).

*Strickland*'s first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption that counsel's conduct [fell] within the wide range of reasonable

professional assistance." *Id.* at 689. The "basic lesson" of *Strickland* is that "[j]udicial scrutiny of counsel's performance must be highly deferential." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." *Id.*

*Strickland*'s second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Valentino*, 972 F.3d at 580 (quoting *Harrington*, 562 U.S. at 86). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays v. Hines*, 592 U.S. 385, 392 (2021) (alteration in original) (quoting *Knowles*, 556 U.S. at 123).

### A. Claim 1(c).

In Claim 1(c), Petion alleges that his counsel was ineffective for not calling Dougherty as a witness. The Supreme Court of Virginia found this allegation failed to state a claim of ineffective assistance of counsel under both prongs of *Strickland.*

> In another portion of claim (I), petitioner contends he was denied the effective assistance of counsel because counsel failed to call Dougherty as a witness. Petitioner provides an affidavit in which Dougherty asserts he never discussed drugs or gang membership with petitioner, petitioner was at the hotel because he was hired to shoot a music video, and the drugs found at the hotel room belonged to Dougherty, not petitioner.
>
> The Court holds this portion of claim (I) fails to satisfy the "performance" prong of the two-part test enunciated in *Strickland*. The record, including the transcripts of petitioner's trial and sentencing hearing, the manuscript record, and counsel's affidavit, demonstrates counsel interviewed Dougherty, but determined he would not be a "suitable witness" because his "demeanor and knowledge (or seeming lack thereof) caused counsel to have no faith in his credibility." Petitioner alleges no

> facts demonstrating this determination was objectively unreasonable. *See Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (acknowledging that credibility concerns may support a strategic decision not to call a witness to testify at trial); *see also Wiggins*, 539 U.S. at 521 (stating strategic choices are "virtually unchallengeable"); *Strickland*, 466 U.S. at 689. Thus, petitioner has failed to demonstrate that counsel's performance was deficient.

Dkt. No.35-4 at 8-9.

The state court's decision denying this claim was not contrary to or involved an unreasonable application of clearly established federal law, nor was the decision based on an unreasonable determination of the evidence presented in the trial court under 28 U.S.C. § 2254(d). On the contrary, the Fourth Circuit has held that the decision to call witnesses is a matter of trial tactics that should not be second-guessed on habeas. *See Bunch v. Thompson*, 949 F.2d 1354, 1365 (4th Cir. 1991). Accordingly, Claim 1(c) will be dismissed.

### B. Claim 2(f).

Petion alleges in Claim 2(f) that his counsel was ineffective because he failed to object when Meyer, an expert witness, testified that the lab test, (in addition to identifying heroin, marijuana, and cocaine) also indicated the presence of fentanyl.[26] Petion alleges that his counsel's failure to object resulted in "misinformation" being presented as "fact" to the jury; he also should have impeached Meyer because he "failed to note that nowhere on Meyer's lab report was there any mention of fentanyl being present." Dkt. No. 27 at 10.[27] The Supreme Court of Virginia denied

---

[26] The certificate did not name fentanyl but noted that "[a]dditional substance(s)] that are controlled were indicated but not confirmed." Hab. at 79.

[27] Petion has also raised this matter in his Amended Reply and characterizes it as a new claim. *See, infra* at 30-31.

The Supreme Court of Virginia also dismissed a related claim of ineffective assistance of counsel, which alleged counsel was ineffective for not objecting to Meyer's testimony because "the certificate of analysis did not list him as a suspect." Dkt. No. 35-4 at 9-10. This claim was found to be without merit and was dismissed. *Id.* at 10. To the extent Petion may have confused the related claims involving Meyer, the Supreme Court of Virginia's decision to dismiss both claims was neither contrary to nor involved an unreasonable application of clearly established federal law, nor was the decision based on an unreasonable determination of the evidence presented in the trial court under 28 U.S.C. § 2254(d).

this claim, making the following findings of fact and conclusions of law:

> The Court holds this portion of claim (I) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to explain why the absence of a reference to fentanyl on the certificate rendered Meyer's testimony inadmissible. Moreover, the record, including the trial transcript and exhibits, demonstrates the certificate did indicate other controlled substances were indicated, but not confirmed, as Meyer testified. Further, petitioner does not explain why an objection, motion to dismiss, or motion for a mistrial would have been likely to succeed. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Dkt. No. 35-4 at 11. As reflected in the state court decision, there was no misinformation placed before the jury.[28] *See United States v. Chapman*, 593 F.3d 365, 368 (4th Cir. 2010) ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.") (citation omitted) (quoting *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998)); *see also Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989) (holding that deciding whether to object or not is a tactical decision that "attorneys make routinely").[29]

The issue is not whether counsel "deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S., at 690); the issue is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard[.]" *Id.* In addition, to establish prejudice for failing to object (which he has not), Petion must show "both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that

---

[28] Trial counsel used Meyer to establish that Petion's name was not on the lab request form, and to demonstrate there are several opportunities for contamination in the laboratory setting. Hab. at 598-603. There were no charges related to fentanyl and no reason to draw any attention to it. *See Moore v. United States*, 934 F. Supp. 724, 727 (E.D. Va. 1996) (it is often better for a defense attorney "to remain silent than to draw attention to a matter by offering an objection. Courts, too, recognize counsel's autonomy in strategic trial behavior.").

[29] *See, e.g., Jones*, 778 F.3d at 583 (holding that counsel made a reasonable decision to not impeach a witness on a minor point which supported the government's theory).

granting the motion would have affected the outcome of his trial." *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525 (4th Cir. 2016) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Tice v. Johnson*, 647 F.3d 87, 107-08 (4th Cir. 2011)). The Supreme Court of Virginia made this explicit finding in its dismissal of this claim. Dkt. No. 35-4 at 11. The state court's decision was neither contrary to nor involved an unreasonable application of clearly established federal law, nor was the decision based on an unreasonable determination of the evidence presented in the trial court under 28 U.S.C. § 2254(d). Accordingly, Claim 2 (f) will be dismissed.

  *C. Claim 2(g).*

  Petion alleges in Claim 2(g) that his counsel was ineffective because he did not "recuse" himself due to a conflict of interest. The Supreme Court of Virginia rejected his claim that counsel was ineffective for not withdrawing from his representation of petitioner, despite petitioner's repeated requests to that effect, making the following findings of fact and conclusions of law:

> In another portion of claim (I), petitioner contends he was denied the effective assistance of counsel because counsel failed to withdraw from his representation of petitioner, despite petitioner repeatedly asking him to withdraw.
>
> The Court holds this portion of claim (I) fails to satisfy the prejudice prong of the two-part test enunciated in *Strickland*. Petitioner fails to explain why a different outcome at trial would have been reasonably probable had counsel withdrawn from representation and petitioner been represented by different counsel at trial. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Dkt. No. 35-4 at 11. The state court's decision was neither contrary to nor involved an unreasonable application of clearly established federal law, nor was the decision based on an unreasonable determination of the evidence presented in the trial court under 28 U.S.C. § 2254(d). Accordingly, Claim 2 (g) will be dismissed.

## VI. Miscellaneous

  Petion's responses to the motion to dismiss include a request for discovery, an evidentiary

hearing, and what appears to be an attempt to further amend his § 2254 petition. Each matter will be addressed in turn.

### A. Discovery.

"Unlike other civil litigants, a § 2254 habeas petitioner 'is not entitled to discovery as a matter of ordinary course.' *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, he must 'show good cause before he is afforded an opportunity for discovery.' *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998)." *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009). Rule 6 of the Rules Governing § 2254 ("Habeas Rule") cases authorizes a district court to permit discovery "only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). Rule 6, however, does not authorize "fishing expeditions." *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994) ("petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence.") (quoting *Munoz v. Keane*, 777 F. Supp. 282, 287 (S.D.N.Y. 1991), *aff'd*, 964 F.2d 1295 (2d Cir. 1992)). Petion has not made a showing of good cause. On the contrary, much of what he has alleged is largely conclusory and disproven by the record. *See Harrison v. Clarke*, No. 2:14cv467, 2015 WL 13081206, at *16 (E.D. Va. May 15, 2015) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.") (citing *Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011)), *report and recommendation adopted*, No. 2:14cv467, 2015 WL 13079297 (E.D. Va. Aug. 11, 2015), *dismissed*, 632 F. App'x 124 (4th Cir. 2016). Accordingly, his request is denied.

### B. Evidentiary Hearing

Under Habeas Rule 8(a), this Court determines, in its discretion, whether an evidentiary hearing is required and if this Court finds a hearing is not required, then the Court "shall make

such disposition of the petition as justice shall require." *Id.* The Fourth Circuit has held that this Court's discretion in determining whether a hearing is needed is "broad." *See Maynard v. Dixon*, 943 F.2d 407, 411-12 (4th Cir. 1991) (noting that the courts have the discretion to determine if a legal issue should even be briefed) (citing C. Wright, A. Miller & E. Cooper, 17A *Federal Practice and Procedure: Jurisdiction* 2d § 4268.3, at 505-17 (1988)). The Court exercises its discretion by finding that no hearing is required, as the legal issues presented by the § 2254 petition have been adequately briefed and the historical record is sufficient to decide those legal issues.

### C. Additional Claims

On December 20, 2024, Petion submitted a response to the motion to dismiss entitled "Amended Reply Brief to Virginia Attorney General's Response to Petitioner's Federal Habeas Corpus Petition Under 28 USCS 2254." Dkt. No. 42 ("Amended Reply"). The Amended Reply explains that Petion is filing "additional claims" because he only "recently receive[d]" his trial transcripts and other documents, such as the lab report prepared by Meyers. *Id.* at 2. The state habeas records, however, establish that Petion's assertion regarding transcripts, other documents, and the lab report is incorrect. As part of his response to the state petition, Respondent filed the state court criminal record as an exhibit. Hab. 167-1209.[30] The Court will address each of the additional claims because, after reviewing the record, it is clear they are also defaulted and or without merit.

Petion's first new claim, which he designates Claim K, asserts he has "new evidence" that

---

[30] The record includes the tables of contents, *id.* at 167-69; general district court record, *id.* at 170-88; 189-302 (various pleadings, orders, and other trial court records, exhibits, and filings); 10/23/2019 Transcript, *id.* at 303-667; 10/24/2019 Transcript, *id.* at 668-818; *id.* at 819-939 (sentencing documents, letters from Petion, orders, pleadings); 7/1/2019, 7/18/2019, 9/25/2019, 1/9, 2020, and 2/13/2020 Transcripts, *id.* at 940-1042; *id.* at 1043-1206 (miscellaneous, appellate orders, letters from Petion, orders, request for records from the Attorney General). Petion's state habeas petition, executed on August 25, 2021, also included copies of criminal pleadings and orders from his trial (Hab. at 18-19, 78, 81, 82-84, 85-86, 1314-15, 1322-25) portions of the Court of Appeals of Virginia's order denying his petition for appeal (*id.* at 2, 94-96), portions of transcripts (*id.* at 46, 47-75, 1288), and the Certificate of Analysis (*id.* at 79-80.)

Meyers made false statements about fentanyl that contradicted her "lab analysis." Dkt. No. 42 at 2. As indicated from the state habeas record, Petion had the certificate of analysis at the time he filed his state habeas petition, and attached portions of that record to his state habeas petition. In addition, he was served with a copy of the same certificate of analysis by the respondent. Hab. at 79-80, 273-74.[31] This is not "new evidence," and there was no false statement. The certificate of analysis indicates that heroin, cocaine, marijuana, and stated that an additional controlled substance was "indicated but not confirmed." *Id.* at 273. At trial, Meyers was asked what additional substance was indicated and she responded fentanyl. Hab. at 594, 596.

Presented as an ineffective assistance claim, Petion has shown neither an unreasonable act or omission of counsel nor a credible allegation of prejudice. Myers' testimony was not demonstrably false, and there was nothing that needed to be "corrected for the jury." Dkt. No. 42 at 2. The Court can discern no difference between this claim, and Claim 2(f), which was addressed above. *See*, *supra* at 26-28. In state habeas, the Supreme Court of Virginia found Claim K (Claim 2(f)) failed to state a claim under either prong of *Strickland*. Dkt. No. 35-4 at 10-11. Applying AEDPA deference, the state habeas court's dismissal of this claim was not an unreasonable application of federal law, nor was it an unreasonable determination of the facts. Accordingly, even presented in this purported new form, this claim fails and will be dismissed.

Next, in what Petion designates as Claim 2, he relies on an "affidavit" from his co-defendant, Meyers' alleged false testimony, and "letters" that his attorney should have shown the jury. *Id*. at 2.[32] First, Petion did not attach an affidavit, but he included copies of two letters

---

[31] None of the evidence Petion refers to in his Amended Reply is new. The attachments were part of his state habeas petition.

[32] As a practical matter, the letters were dated February 20, 2020 and March 30, 2020, and Petion's trial was in October 2019. Petion's counsel could not have shown the jury two letters that did not exist at the time of his trial.

allegedly written by Jacob Dougherty, his co-defendant. Dkt. Nos. 42-10 and 42-13. One letter is dated March 30, 2020, and is addressed to Petion's appellate counsel and Dougherty allegedly claims, in the letter, that the drugs were his and that Petion was "only an entrepreneur," present to help shoot a video. Dkt. No. 42-10.[33] In the second undated letter, stamped received and filed by the circuit court clerk on February 20, 2020, Dougherty alleges Petion had nothing to do with the drugs and had "no involvement in any illegal drug activity" or in "gang affiliation" with Dougherty. Dkt. No. 42-13. In each letter, Dougherty indicates he was subpoenaed for Petion's trial but not called. At the end of the trial proceedings on October 23, 2019, the prosecutor indicated that, if Dougherty testified, he would submit an unredacted judgment order, which included his conviction for participating in gang activity on October 9, 2018. Hab. 87-89, 369. When trial resumed on October 24, 2019, defense counsel rested without calling Dougherty. *Id.* at 514.[34]

The unsworn letters are not evidence, and even if the letters were sworn to by Dougherty, the letters do not "exonerate" Petion. Moreover, there is no freestanding claim of actual innocence asserted by Petion here.[35] *Herrera v. Collins*, 506 U.S. 390, 404, (1993) ("a claim of 'actual

---

[33] Petion submitted the letter dated March 30, 2020 as Ex. No. 12 to his state habeas petition. Hab. at 40-41, 110. The state habeas petition was executed on August 25, 2021. *Id.* at 7.

[34] Petion testified in the penalty phase of his trial and admitted his nicknames were "Bless," and "Hollywood Haiti;" that Chris Foxworth was a friend of his; and that he had two previous felony convictions. Hab. at 793.

[35] Defendant "did not need to possess or distribute controlled substances to be guilty of a drug-trafficking conspiracy. *See United States v. Colon*, 268 F.3d 367, 376 (6th Cir. 2001) ("[I]t is possible to conspire to commit these drug offenses [possession, possession with intent to distribute and distribution] without actually committing the offense themselves; thus it is not impossible to commit the greater offense (conspiracy) without committing the suggested lesser offenses.") (quoting *United States v. Horn*, 946 F.2d 738, 745 (10th Cir. 1991))." *United States v. Garcia*, 834 F. App'x 134, 141 (6th Cir. 2020); *see United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence."). As explained in *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations," but the United States Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a free-standing claim of actual innocence." *Id.* at 392. *See also House v. Bell*, 547 U.S. 518, 555 (2006) (noting that a freestanding actual innocence claim would require "more convincing proof of innocence" than that needed to meet the gateway standard).

innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *Buckner v. Polk*, 453 F.3d 195, 200 (4th Cir. 2006) ("New evidence that merely undermines the state's theory of the case but does not rebut specific jury findings of guilt is insufficient to demonstrate actual innocence.") (citing *Herrera*, 506 U.S. at 418-19).

Here, Petion was charged with two counts of conspiracy. When charged with conspiracy,

> [n]ot only is it unnecessary for each member of a conspiracy to agree to commit each element of the substantive offense, but also a conspirator may be convicted "even though he was incapable of committing the substantive offense" himself. *Salinas [v. United States]*, 522 U.S. [52,] 64 [(1997)]; *see United States v. Rabinowich*, 238 U.S. 78, 86 (1915) ("A person may be guilty of conspiring although incapable of committing the objective offense"); Sand [*et al., Modern Federal Jury Instructions: Criminal*] §19.01, at 19-3 [(2015)]. ("[ Y ]ou may find the defendant guilty of conspiracy despite the fact that he himself was incapable of committing the substantive crime").

*Ocasio v. United States*, 578 U.S. 282, 289 (2016).[36]

The last part of Claim 2 concerns the alleged false testimony of Meyers in the context of an allegation of ineffective assistance, which the Court has already addressed. *See, supra*. In addition, the Supreme Court of Virginia found the substantive allegation was defaulted in state habeas, Dkt. No. 35-4 at 19, which precludes federal review.

In Claim 3 of his Amended Reply, Petion lists seven allegations of prosecutorial misconduct, labeled 3(a) through 3(g), that allegedly occurred during trial. Each of these claims is

---

[36] *Ocasio* illustrated this point with examples.

A few simple examples illustrate this important point. Entering a dwelling is historically an element of burglary, *see, e.g.,* [W.] *LaFave*, *Criminal Law* [1069] (5th ed. 2010), but a person may conspire to commit burglary without agreeing to set foot inside the targeted home. It is enough if the conspirator agrees to help the person who will actually enter the dwelling, perhaps by serving as a lookout or driving the getaway car. Likewise, "[a] specific intent to distribute drugs oneself is not required to secure a conviction for participating in a drug-trafficking conspiracy." *United States v. Piper*, 35 F. 3d 611, 614 (1st Cir. 1994). Agreeing to store drugs at one's house in support of the conspiracy may be sufficient. *Ibid*.

578 U.S. at 288.

defaulted and Petion does not assert cause and prejudice to excuse his defaults.

Claim 3(a), concerns the cautionary instruction regarding references to Petion being incarcerated. Dkt. No. 42 at 24. In state habeas, Petion alleged two claims regarding the cautionary instruction for testimony that indicated Petion was incarcerated pre-trial. Dkt. No. 35-4 at 21-22. Each claim was defaulted pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (holding that claims that could have been raised at trial or on direct appeal may not be raised on state collateral review). The Fourth Circuit has held "that the *Slayton* procedural bar qualifies as such an adequate and independent state law ground, which a federal court may not review absent cause and prejudice, or a miscarriage of justice. *Lewis v. Wheeler*, 609 F.3d 291, 309 (4th Cir. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Vinson*, 436 F.3d at 417)). Petion has not established either cause or prejudice, nor a miscarriage of justice. The jury was given a cautionary instruction and the jury is presumed to follow such an instruction. *See supra* at 15 at note 18; and at 22. Accordingly, this claim also fails and is dismissed.

In Claim 3(b), Petion alleges his counsel colluded with the prosecutor to violate Petion's right to a speedy trial. Dkt. No. 42 at 24. Petion's speedy trial was never violated.[37] The prosecutor sought a continuance to interview one of Petion's co-defendants and suggested a date, October 23, 2019, "which was still within [Petion's] speedy trial timeframe." Hab. at 973. In Virginia, "[w]here a general district court has found that there is probable cause to believe that the accused has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within

---

[37] Petion is referring to his statutory right to a speedy trial. The Virginia Speedy trial statute, Virginia Code § 19.2-243, requires a defendant be brought to trial within five months of indictment if he is detained pre-trial. *Young v. Commonwealth*, 829 S.E.2d 548, 552 (Va. 2019) ("Code § 19.2-243, the speedy trial statute, provides that if a defendant, who stands accused of a felony, is continuously held in custody from the time he was indicted or from his preliminary hearing, he "shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months.").

five months from the date such probable cause was found by the district court." *Hudson v.*

*Commonwealth*, 591 S.E.2d 679, 681 (Va. 2004). The general district court found probable cause

on May 28, 2019 for participation in criminal gang activity, in violation of Virginia Code § 18.2-

46.2; for conspiracy to distribute cocaine, in violation of Virginia Code § 18.2-256, and for

conspiracy to distribute heroin, in violation of Virginia Code § 18.2-256. Hab. at 170-72.

Petion's trial began on October 23, 2019, which was 148 days after probable cause was found.

Claim 3(b) is frivolous, devoid of merit, and will be dismissed.

In Claim 3(c), Petion states that Figueroa was offered a plea deal on the first day of her

trial, on October 2, 2019. Dkt. No. 42 at 3. The Supreme Court of Virginia dismissed a claim

mentioning Figueroa and her plea agreement pursuant to the rule of *Slayton*. The Supreme Court

of Virginia found the claim defaulted stating that

> [t]he record, including the trial transcript and trial exhibits, demonstrates [that]
> Figueroa testified that she had been arrested, charged, and pled guilty to conspiracy
> to distribute a controlled substance. Moreover, the court admitted a copy of
> Figueroa's plea agreement at trial. Petitioner does not allege any post-trial
> discovery of a fact he had no knowledge of at the time of trial.

Dkt. No. 35-4 at 22. There is no cause or prejudice to excuse the default and this claim will be

dismissed.

In Claim 3(d), Petion appears to alleged that the fact that the trial judge gave the prosecutor

his "assurance" that the case would be tried within the five-month time limit is somehow improper.

Dkt. No. 42 at 3. This assertion is not only simultaneously exhausted and defaulted, but it also

ignores the undisputable fact that Petion's trial commenced in accordance with the state speedy

trial statue. This claim will be dismissed.

In Claim 3(e), Petion returns to the state speedy trial statute again, asserting it was a

violation of his speedy trial right to grant a continuance over his objection on September 25, 2019.

Dkt. No. 42 at 3. In Virginia, "'[t]he decision to grant a motion for a continuance is within the

sound discretion of the circuit court' and will be reversed 'only upon a showing of abuse of discretion *and* resulting prejudice to the" party who claims an abuse of discretion. *Ortiz v. Commonwealth*, 667 S.E.2d 751, 762 (Va. 2008) (citation omitted). The same is true in federal district courts as well. *United States v. Colon*, 975 F.2d 128, 130 (4th Cir. 1992) ("The decision to grant or deny a motion for continuance, lies within the sound discretion of the trial court" and it will not be reversed absent prejudice) (citations omitted). This claim is simultaneously exhausted and defaulted, there is no showing of cause or prejudice, and it will be dismissed.

In Claim 3(f), Petion alleges that his trial counsel and the trial judge had a conflict of interest because he filed a § 1983 civil action against each. The civil action he appears to refer to is *Petion v. Parrett et al.,* No. 1:20-cv-00057-RDA-TCB (E.D. Va.), which was filed on January 16, 2020 and named his trial counsel and the prosecutor—he did not name the judge. The Court dismissed the matter with prejudice on April 7, 2020 because both defendants were immune from suit.  Moreover, his civil action was never served.  Petion does not explain how a frivolous lawsuit in any way created a conflict of interest, especially when the defendants were never served. This claim is exhausted and simultaneously defaulted and will be dismissed.

His last claim, Claim 3(g), is another iteration of his claim that Meyer testified falsely regarding the presence of fentanyl. Dkt. No. 42 at 3. This allegation does not improve with time or on repetition and it has been addressed repeatedly herein explaining why it has no merit. *See, supra*. Claim 3 of the Amended Reply is dismissed.

Claim 4 of the Amended Reply concerns the trial judge's alleged misconduct in discussing and granting a cautionary instruction. Dkt. No. 42 at 4. The claim is simultaneously exhausted and defaulted because Claim 4 asserts a new allegation that differs from those set forth in the original and amended § 2254 petitions. Petion does not argue cause and prejudice exist and none is apparent

in the record. The claim is also frivolous— it is an inherent aspect of a criminal trial that counsel and the court discuss cautionary instructions. Here, it was also done in the presence of Petition and his counsel. Claim 4 is dismissed.

Petion's last claim in his Amended Reply, Claim 5, alleges the evidence was insufficient to sustain his convictions because the officers on the scene on October 9, 2018 did not have probable cause to arrest him and take him into custody. Dkt. No. 42 at 4. Petition raised two sufficiency issues on appeal that concerned the sufficiency of the evidence to sustain his convictions:

    I.   The trial court erred in denying the Defendant's motion to strike as to the two charges of Conspiracy to Distribute a Schedule I/II Controlled Substance as the evidence was insufficient to convict the Defendant of those charges.

    II.   The trial court erred in denying the Defendant's motion to strike as to the charge of Criminal Street Gang Participation as the evidence was insufficient to prove the Defendant's participation in a criminal street gang.

Dkt. No. 12-2 at 5. The Court of Appeals found each was without merit and the evidence was sufficient to sustain his convictions. Dkt. No. 12-7. The Supreme Court of Virginia refused the subsequent petition for appeal raising the same issues. Dkt. Nos. 12-5 at 7; 12-10. *Cramer v. Crutchfield*, 648 F.2d 943, 946 (4th Cir. 1981) (stating that under Virginia law, "a conviction for the offense charged, even though subsequently . . . vacated, is conclusive evidence of probable cause, unless the conviction was procured by the defendant through fraud or by means of evidence that he knew to be false"); *see also Gouskos v. Griffith*, 122 F. App'x 965, 972 (10th Cir. 2005) ("Likewise, if the false arrest plaintiff is convicted in the criminal trial for the acts for which he was arrested, probable cause for his arrest is conclusively established and precludes a subsequent civil action for false arrest."); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (noting conviction is generally "conclusive evidence" of probable cause). This claim is frivolous, simultaneously

exhausted and defaulted, and without merit. It will be dismissed.

## VII. Conclusion

For the foregoing reasons, the motion to dismiss the petition, Dkt. 33, must be granted and the petition must be dismissed with prejudice and an appropriate Order shall issue.[38]

Entered this 21st day of August, 2025.
Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[38] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.